UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GILBERT M. MARTINEZ,

                Plaintiff,

  - against -

QUEENS COUNTY DISTRICT ATTORNEY,
ADA DEBRA POMODOR; KINGS COUNTY
DISTRICT ATTORNEY; NEW YORK CITY
POLICE DEPARTMENT, NARCOTICS
DIVISION; CITY OF READING POLICE
DEPARTMENT; GLORIA P. MARGARY;
RAFAEL MARGARY; GLORIA A. MARGARY;
MID-PENN LEGAL SERVICES; NEW YORK
SUPREME COURT, HON. ALICE
SCHLESINGER; KINGS COUNTY FAMILY
COURT, HON. ANTHONY CANNATARO;
BERKS COUNTY FAMILY COURT, HON.
SCOTT E. LASH; BERKS COUNTY HUMAN
RESOURCES; BERKS COUNTY SOCIAL
SECURITY ADMINISTRATION; T-MOBILE US
INC.; MET-ED ELECTRIC SUPPLIER;
VERIZON NEW YORK INC.; BERKS
COMMUNITY HEALTH CENTER; READING
HOSPITAL; SAINT JOSEPH HEALTH
NETWORK D/B/A SAINT JOSEPH MEDICAL
CENTER; SUNY DOWNSTATE MEDICAL
CENTER; MICHAEL D. CARLIN ESQ. AND
JESSICA A. SPECTOR ESQ.,

                Defendants.
-------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge

**MEMORANDUM AND ORDER**
12-CV-06262 (RRM) (RER)

       Plaintiff Gilbert M. Martinez, appearing *pro se*, commenced this action on December 20,

2012. In his second amended complaint, plaintiff alleges violations of 42 U.S.C. § 1983 against

twenty-three governmental and private defendants, including state court judges, state

prosecutors, private attorneys, utilities, hospitals, and private parties, and seeks monetary

damages and various declaratory judgments. (*See* Second Am. Compl. (Doc. No. 77).)

1

Presently before the Court are several motions, all of which are fully briefed: (1) plaintiff's motion for recusal pursuant to 28 U.S.C. § 455 (Doc. No. 142) and (2) motions to dismiss filed by Berks County Family Court (Doc. No. 107); Metropolitan Edison Company, a/k/a Met-Ed Electric ("Met-Ed") (Doc. Nos. 124 and 126); St. Joseph Regional Health Network d/b/a St. Joseph Medical Center ("SJMC") (Doc. No. 129); Reading Hospital (Doc. No. 128); Berks Community Health Center ("BCHC") (Doc. No. 131); Mid-Penn Legal Services ("Mid-Penn") (Doc. No. 108); Verizon New York, Inc. ("Verizon NY") (Doc. No. 130); T-Mobile US, Inc. ("T-Mobile") (Doc. No. 160); City of Reading Police Department ("RPD") (Doc. No. 123); and Jessica A. Spector (Doc. No. 161). In response to these motions, plaintiff filed several opposition briefs in which plaintiff cites broad principles of law relating to Section 1983 claims, criminal conspiracies, and tort liability.[1] For the reasons set forth below, plaintiff's motion for recusal is denied, and the motions of these defendants are granted as to all claims filed against them.

Furthermore, Defendants Queens County District Attorney, ADA Debra Pomodor; Kings County District Attorney; City of New York; Gloria P. Margary; Rafael Margary; Gloria A Margary; Berks County Social Security Administration ("BCSSA"); SUNY Downstate Medical Center ("SUNY Downstate"); New York Supreme Court, Hon. Alice Schlesinger; and Kings County Family Court, Hon. Anthony Cannataro have not appeared in this matter. Defendant Berks County Human Resources ("BCHR") has appeared by counsel and by letter seeks to dismiss plaintiff's claims against it on several grounds. All of these defendants either were not sufficiently served with process and/or would not be amenable to suit, and the Court dismisses

[1] The Court will grant the motions to strike plaintiffs declaration at Doc. No. 168 (*see* Doc. Nos.171, 177) as plaintiff's filing was made long after completion of full briefing on these motions, and constitutes an improper attempt by plaintiff to supplement his pleadings "by the briefs in opposition to a motion to dismiss." *LaFlamme v. Societe Air France*, 702 F. Supp. 2d 136, 148 n.18 (E.D.N.Y. 2010).

the claims against these defendants as well. Accordingly, plaintiff's second amended complaint is dismissed in its entirety.

**BACKGROUND**[2]

In his second amended complaint, plaintiff, a resident of Reading, Pennsylvania, alleges that defendants engaged in several elaborate and multi-faceted conspiracies to deprive him of his civil rights. Plaintiff's claims are logically grouped as follows: First, plaintiff alleges that, beginning in July 2009 and continuing through the present, he was unlawfully investigated and indicted by Debra Pomodor, a prosecutor in the Queens County District Attorney's Office, with help from the Kings County District Attorney and members of the New York City and Reading Police Departments. Specifically, plaintiff alleges that Debra Pomodor filed a fraudulent indictment against him, for which he spent two-and-a-half months in jail and incurred $30,000 dollars in costs; that the Queens County and Kings County district attorneys – together with the New York Police Department ("NYPD"), Verizon NY, and T-Mobile – unlawfully wire-tapped his phone and internet connection in order to compel him to accept a plea agreement and become a state trial witness; that "the Queens County court illegally sentenced [plaintiff] for charges that were already dismissed by the Grand Jury"; and that T-Mobile conspired with authorities to ignore a court-ordered subpoena and withhold certain phone records of defendant Gloria P. Margary. (2d Am. Compl. at 5–7, 19–20.)

Second, plaintiff challenges several decisions entered in child-custody cases pending before the Berks County, Pennsylvania, and the Kings County, New York, Family Courts as well

---

[2] The following facts are taken from the second amended complaint and, to the extent they include concrete facts as opposed to conclusory legal assertions, are presumed to be true for the purposes of defendants' motions to dismiss. *See E.E.O.C. v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000); *see also Jackson v. Cnty of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011) (noting that since defendant's "assertions lack any factual foundation, they are merely conclusory allegations masquerading as factual conclusions, which are insufficient to defeat a motion to dismiss" (internal quotation marks omitted)).

as the New York County Supreme Court, alleging a conspiracy between the attorneys who were involved in those matters, the courts themselves, and other state agencies. Plaintiff alleges that, beginning in January 2012 and continuing through May 2013, these defendants conspired to remove his son from his custody by, *inter alia*, improperly denying plaintiff's court requests and motions, forcing plaintiff to accept a burdensome interim custody agreement, proceeding against plaintiff despite lacking jurisdiction over him, unlawfully jailing plaintiff overnight for contempt, meeting in private to strategize against plaintiff, aiding witnesses in testifying falsely, and making factual findings not supported by the evidence. (*Id.* at 7–12, 20–22.) Plaintiff further alleges that, from September 2012 through January 2013, BCHR and BCSSA conspired to cause plaintiff hardship and to make it difficult for plaintiff to commute to the New York Family Court by purposefully depriving plaintiff of federal benefits for which he was eligible and by intentionally scheduling a benefit hearing to conflict with a court date. (*Id.* at 13–14.) Plaintiff also alleges that defendants Gloria P. Margary, Rafael Margary, and Gloria A. Margary worked together to wrongfully deprive plaintiff of custody over his son by making fraudulent misrepresentations and by submitting false abuse allegations to the state family courts. (*Id.* at 18–19.)

Next, plaintiff alleges that Met-Ed, a power utility serving Berks County, Pennsylvania, intentionally shut off the power to plaintiff's home in October 2012 so that police could enter his home and retrieve a tape recorder without tripping his alarm. (*Id.* at 14–15.) Finally, plaintiff alleges another conspiracy between SJMC, Reading Hospital, BCHC, SUNY Downstate, and the NYPD from July 2012 through March 2013 to repeatedly deprive plaintiff of needed pain medication, entrap him into purchasing illegal narcotics, and intentionally administer harmful medications to him. (*Id.* at 15–18.)

Plaintiff filed his original complaint on December 20, 2012. By a Memorandum and Order dated December 26, 2012, *See Martinez v. Pomodor*, No. 12-CV-6262, 2012 WL 6698733, at *1–2 (E.D.N.Y. Dec. 26, 2012), the Court dismissed the original complaint as against defendants Berks County Family Court, Judge Lash, Kings County Family Court, Judge Cannataro, and New York Supreme Court, Judge Schlesinger for lack of subject matter jurisdiction pursuant to the domestic relations exception to federal jurisdiction.[3] (*Id.* at 3.) On July 8, 2013 plaintiff filed his proposed second amended complaint. By Order dated July 24, 2013, the Court adopted the second amended complaint as the operative complaint and granted leave to the remaining defendants to submit fully briefed motions to dismiss by September 13, 2013. By order dated October 10, 2013, the Court granted further leave to defendants Jessica A. Spector, T-Mobile, and City of Reading Police Department to submit motions to dismiss by December 5, 2013.

## DISCUSSION

### I. Plaintiff's Motion for Recusal

The Court will first address plaintiff's motion for recusal, as it challenges the Court's ability to preside impartially over this matter. Plaintiff argues that this Court should recuse itself under 28 U.S.C. § 455[4] because the Court "has in the past deliberately violated the plaintiff's personal liberties and/or has wantonly refused to provide due process and equal protection to the litigants before the court or has behaved in a manner inconsistent with that which is needed for full, fair, impartial hearings." (Mot. to Recuse (Doc. No. 142) at 1.) The motion is without merit.

---

[3] Plaintiff, however, continues to assert claims against defendants in his second amended complaint.

[4] Plaintiff also bases his motion for recusal on *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). That case, however, is inapposite as it dealt with whether a provision of the Fair Labor Standards Act unconstitutionally "creat[ed] an impermissible risk of bias in the Act's enforcement and administration." *See id.* at 239–40, 243.

Under 28 U.S.C. § 455, "[a]ny justice, judge or magistrate judge of the United States shall disqualify [her]self in any proceeding in which h[er] impartiality might reasonably be questioned" and, in particular, where she "has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(a)–(b)(l). "This provision is to be evaluated on an *objective* basis, so that what matters is not the reality of bias or prejudice but its appearance." *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 107 (2d Cir. 2012) (quoting *Liteky v. United States*, 510 U.S. 540, 548 (1994)). "The question . . . is whether an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal, or alternatively, whether a reasonable person, knowing all the facts would question the judge's impartiality." *ISC Holding AG*, 688 F.3d at 107 (alteration in original) (internal quotation marks omitted). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. Thus, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Id.*; *see also Lewis v. Tuscan Dairy Farms, Inc.*, 25 F.3d 1138, 1141 (2d Cir. 1994) (noting that showing of personal bias necessary to prevail on a motion for recusal ordinarily "must be based on extrajudicial conduct . . . not conduct which arises in a judicial context" (quotations omitted)).

There is no reason for recusal here. As evidence that the Court violated his civil rights, plaintiff submitted a declaration pointing to seven instances where the Court issued substantive and procedural rulings in defendants' favor in this matter.[5] (*See* Mot. to Recuse at 2.) Plaintiff

---

[5] Specifically, plaintiff claims that, in an attempt to cause him financial harm, the Court improperly (1) dismissed the claims against the state court judges; (2) failed to issue plaintiff's requested order to show cause and injunction against defendants BCHR and BCSSA; (3) failed to issue an injunction to stay the state child custody proceedings; (4) refused to grant a writ of *habeas corpus* overturning plaintiff's state family court offense conviction; (5) refused

maintains that these rulings indicate the Court is biased against plaintiff. However, the mere fact that the Court has declined to afford plaintiff his suggested relief provides no grounds to suggest that the Court is biased or prejudiced against plaintiff, nor does it in any way suggest that the Court's "impartiality might reasonably be questioned." *See Liteky*, 510 U.S. at 548; *Lewis*, 25 F.3d at 1141. Based on the objective circumstances, no reasonable observer could conclude otherwise. Accordingly, plaintiff's motion for recusal is denied. *See Clemmons v. Comm'r of Social Sec.*, No. 11-CV-1645, 2011 WL 6130926, at *6 (E.D.N.Y. Dec. 8, 2011); *Robles v. Lempke*, No. 09-CV-2636, 2011 WL 9381499, at *30 (E.D.N.Y. Sept. 9, 2011), *adopted by No. 09-CV-2636, 2012 WL 5507303 (E.D.N.Y. Nov. 14, 2012).

## II. Substantive Grounds for Dismissal

### A. Personal Jurisdiction

Defendants Met-Ed, BCHC, SJMC, and Reading Hospital move to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). When faced with a motion to dismiss under Rule 12(b)(2), "the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant." *DiStefano v. Carozzi North America*, 286 F.3d 81, 84 (2d Cir. 2001). To survive a 12(b)(2) motion prior to discovery, "a plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." *Id.* "Unlike a motion to dismiss pursuant to Rule 12(b)(6), deciding a Rule 12(b)(2) motion necessarily requires resolution of factual matters outside the pleadings. [W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *Zibiz Corp. v. FCN Technology Solutions*, 777 F. Supp. 2d 408, 416 (E.D.N.Y. 2011) (citations and quotations omitted).

---

to issue a default judgment against defendant Gloria P. Margary; (6) rescinded its prior order allowing plaintiff to electronically file documents; and (7) misplaced plaintiff's opposition brief against defendant Judge Scott E. Lash.

"In a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). Under New York law, a court may exercise personal jurisdiction over a defendant in two ways. *See Schultz v. Safra Nat. Bank of New York*, 377 F. App'x 101, 101 (2d Cir. 2010) (summary order). First, a court may exercise general personal jurisdiction over a foreign corporation that has "continuous and systematic" contact with the State of New York. *See Licci ex rel. Licci v. Lebanese Can. Bank, SAL*, 673 F.3d 50, 60 n.9 (2d Cir. 2012); *see also* N.Y. C.P.L.R. § 301. A corporation is subject to general personal jurisdiction in New York "if it does business in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Zibiz*, 777 F. Supp. 2d at 416 (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d. Cir. 2000). Factors to consider when determining whether general jurisdiction lies include: (1) whether the defendant maintains an office in New York; (2) whether the defendant has any bank accounts or other property within the state; (3) whether the defendant has a telephone listing in the state; (4) whether the defendant does public relations work or solicits business within the state; and (5) whether the defendant has employees or agents located within the state to promote its interests. *See Wiwa*, 226 F.3d at 98.

Med-Ed, BCHC, SJMC, and Reading Hospital have each submitted affidavits or declarations stating that (1) they are Pennsylvania corporations or entities, each with a principal place of business in Berks County, Pennsylvania; and (2) they do not conduct business, solicit business, or own or lease land in New York. (*See* Marconi Aff. (Doc. No. 126-1); Karpovich Aff. (Doc. No. 128-1); Schmehl Aff. (Doc. No. 129-2); Kargbo Aff. (Doc. No. 133).) In response, plaintiff argues that the court has personal jurisdiction over these defendants based on

their relationship to other corporate entities, which do conduct business in New York. (*See* Pl.'s Met-Ed Opp'n Br. (Doc. No. 152) at 3–4; Pl.'s Hospital Opp'n Br. (Doc. No. 129-6) at 12–13.) Plaintiff claims that Met-Ed was a subsidiary of a holding company called GPU Energy, which subsequently merged with FirstEnergy Corporation, and points to FirstEnergy's website as proof that FirstEnergy provides energy to customers in New York and that Met-Ed is a subsidiary. (*See* Pl.'s Met-Ed Opp'n (Doc. No. 126-3) at 3–4.) Plaintiff also provides a copy of SJMC's website, which states that SJMC is "affiliated with Catholic Health Initiatives (CHI), a national nonprofit health system with headquarters in Englewood, Colorado . . . [that] operates in 18 states," provides copies of website for two other hospitals in New York called "St. Joseph," and argues that SMJC's "corporation has several locations New York and does conduct business in New York." (Pl.'s Hospital Opp'n (Doc. No. 129-6) at 12–13.)

Even assuming that there is some connection between these defendants and New York entities,[6] "the presence of a local corporation does not [automatically] create jurisdiction over a related, but independently managed, foreign corporation." *Gundlach v. IBM Japan, Ltd.*, No. 11-CV-846, 2013 WL 6123627, at *3–4 (S.D.N.Y. Nov. 21, 2013); *see also Gallelli v. Crown Imports, LLC*, 701 F. Supp. 2d 263, 271–272 (E.D.N.Y. 2010). Rather, to determine whether a foreign entity is a "mere department" of a New York corporation such that general personal jurisdiction over the foreign entity is proper, courts look to the following four factors: "(1) common ownership, (2) financial dependency of the subsidiary on the parent corporation, (3) the degree to which the parent corporation interferes in the selection and assignment of the

---

[6] Med-Ed states that it has not merged with FirstEnergy or the FirstEnergy subsidiary that provides electric power to a small number of customers in New York, and that it remains a separate and distinct legal entity that services a distinct geographic area with a distinct set of customers, is operated by separate management, and is independent financially. (See Marconi Reply Aff. (Doc. No. 126-5) at 2.) As for SJMC, the Court is skeptical that these religiously-affiliated entities are related simply because they share the same of a well-known religious figure. Finally, plaintiff does not offer anything to show that Reading Hospital or Berks Community Health Center is affiliated in any way with another New York-based entity.

subsidiary's executive personnel and fails to observe corporate formalities, and (4) the degree of control over the marketing and operational policies of the subsidiary exercised by the parent." *Gundlach*, 2013 WL 6123627, at *4. Similarly, to assert personal jurisdiction over a foreign entity under the theory that a domestic subsidiary is an "agent" of the foreign entity, a "plaintiff must show that the subsidiary does all the business which [the parent corporation] could do were it here by its own officials." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998).

Other than the few excerpts from websites suggesting that the defendants may be affiliated in some way with other corporate entities, plaintiff has offered no facts showing that the these named defendants are owned by a New York corporation or financially dependent on a New York corporation, are controlled in any way by a New York corporation, or fail to observe corporate formalities that separate them from New York corporations. Plaintiff has also offered no evidence that these defendants control any New York corporation or conducted business in New York using a New York corporation as its agent. Since plaintiff has offered nothing else that rebuts these defendants' sworn statements that they do not continuously and systematically conduct business in New York, the Court finds that plaintiff has failed to make a prima facie showing that any of these defendants have the requisite contact with New York sufficient to establish general personal jurisdiction under N.Y. C.P.L.R. § 301.

In addition to exercising general personal jurisdiction under N.Y. C.P.L.R. § 301, a court may also exercise specific personal jurisdiction over an out of state defendant pursuant to New York's long-arm statute, which provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state . . . ; or

3. commits a tortious act without the state causing injury to person or property within the state . . . if he

    (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

    (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a).  Specific personal jurisdiction under the long arm statute "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. Such jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Licci*, 673 F.3d at 60 n.9 (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, __ U.S. __, 131 S. Ct. 2846, 2851 (2011) (quotations omitted)); *see Zibiz*, 777 F. Supp. 2d at 420 ("Unlike Section 301, which confers personal jurisdiction over an out-of-state defendant for any cause of action, Section 302 requires that the cause of action 'arise from' the defendant's contacts with New York, i.e., that the cause of action arose from the defendant's transaction of business within New York.").  Where the Court lacks personal jurisdiction under New York's long arm statute, the Court need not address whether personal jurisdiction "comports with the Due Process Clause." *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010); *see also Licci*, 673 F.3d at 61 (where "plaintiffs premise their theory of personal jurisdiction upon the New York long-arm statute, we first consider

whether the requirements of the statute have been satisfied before proceeding to address whether the exercise of jurisdiction would comport with the Due Process Clause.").

All of the events giving rise to plaintiff's claims against these defendants and all of the alleged harm he suffered as a result of the defendants' alleged actions occurred in Berks County, Pennsylvania. (Second Am. Compl. at 14–17.) Plaintiff alleges that Met-Ed conspired with the police to shut off the power supply to his home in Reading, Pennsylvania, so that the police could unlawfully enter it without tripping the alarm. (*Id*. at 14–15.) Specifically, plaintiff alleges that the power to his home went out due to severe weather on October, 29, 2012; was restored on October 30, 2012; and was subsequently turned off for several hours on October 31, 2012.[7] (*Id.*). Plaintiff alleges that "the power was turned off prior to him having an appointment at [a hospital] to drain his home battery so the Berks County Police c[ould] enter his premises to retrieve a tape recorder." (*Id*.) Plaintiff also alleges that Reading Hospital, BCHC, and SJMC – all of which are medical centers located in Pennsylvania – refused to provide him with pain medications for his medical conditions and conspired to cause him serious injury by administering medications harmful to his liver. (*See id*. at 15–16.)

Plaintiff acknowledges that these events took place in Pennsylvania, but argues that defendants' role as part of a larger conspiracy is sufficient to establish personal jurisdiction in New York. Plaintiff alleges that Met-Ed "conspired with State authorities to commit unlawful acts and or to intimidate plaintiff with fear." (2d Am. Compl. at 14.) Plaintiff further argues that Reading Hospital, BCHC, and SJMC's actions forced him to leave Pennsylvania and go to New York and were "intended to force [him] into the forum state so their accomplices could set their trap into motion by planting an informant in [SUNY Downstate] to solicit the illegal sale of

---

[7] The Court takes judicial notice of the fact that Hurricane Sandy struck the northeastern United States on October 29, 2012.

prescription drugs" and were thus "intended to have consequences in the forum state which establishes personal jurisdiction." (Pl.'s Hospital Opp'n Br. at 8.)

In some cases, "[t]he New York activities of a 'co-conspirator' may . . . be imputed to an out-of-state defendant for purposes of personal jurisdiction under § 302(a)(2) under an agency rationale." *Shpak v. Curtis*, No. 10-CV-1818, 2011 WL 4460605, at *8 (E.D.N.Y. Sept. 26, 2011). However, "[t]o establish jurisdiction on this basis, a plaintiff must 'make a prima facie showing of a conspiracy and allege specific facts warranting the inference that the defendants were members of the conspiracy.'" *Id.* (quoting *First Capital Inv. Holdings LLC v. Wilson Capital Grp.*, No. 10-CV-2948, 2010 WL 4967833, at *2 (S.D.N.Y. Nov. 30, 2010)). "A court may infer that defendants are members of a conspiracy if plaintiff alleges specific facts showing that (a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control, or at the request of or on behalf of the out-of-state defendant." *Id.* (quotations and citations omitted).

Here, plaintiff has failed to allege any specific facts that warrant any such inferences. While plaintiff claims that Met-Ed shut off his power at the behest of the Berks County Police, plaintiff offers absolutely no facts suggesting that Met-Ed conspired with anyone in New York. Similarly, although plaintiff suggests that Reading Hospital, BCHC, and SJMC conspired with SUNY Downstate to force him to New York so that unnamed law enforcement officers could seek to entrap him, he offers no factual allegations to support this claim. He fails to allege any specific facts tending to show that these defendants denied him pain medication or prescribed him a particular mix of medications at the request of a New York entity, rather than based on their independent medical judgment. He offers no specific facts suggesting that these defendants

knew their actions would drive him to seek medical treatment at a New York hospital at a predictable time such that entities in New York could seek to violate his civil rights. There is simply no basis to impute the alleged activities of any New York entities to these Pennsylvania-based defendants for the purposes of personal jurisdiction.

In short, none of these defendants transacts business in New York, appears to derive substantial revenue from interstate or international commerce, or owns real estate in New York. None of the alleged activity that forms the basis for plaintiff's claims against these defendants occurred in New York. And there is no factual basis supporting plaintiff's claims that these defendants conspired with a New York entity in order to cause plaintiff harm. Therefore, there is no basis for the Court to exercise personal jurisdiction over these defendants pursuant to N.Y. C.P.L.R. § 302(a). Accordingly, plaintiff's claims against Med-Ed, BCHC, SJMC, and Reading Hospital are dismissed.

### B. Domestic Relations Exception

In his second amended complaint, plaintiff alleges that defendants New York Supreme Court, Hon. Alice Schlesinger; Kings County Family Court, Hon. Anthony Cannataro; and Berks County Family Court, Hon. Scott E. Lash conspired to take plaintiff's son from him by concealing facts and evidence and otherwise acting improperly during state court child custody proceedings. However, in a Memorandum and Order dated December 26, 2012, the Court dismissed all claims against these defendants pursuant to the domestic relations exception to the jurisdiction of the federal courts. *See Martinez v. Pomodor*, No. 12-CV-6262, 2012 WL 6698733, at *1–2 (E.D.N.Y. Dec. 26, 2012) (citing cases). As the Court explained in that Order:

> It is well-settled that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *In re Burrus,* 136 U.S. 586, 593–94 (1890). "So strong is [the Supreme Court's] deference to state law in this area that [the Supreme Court has] recognized a 'domestic relations exception' that 'divests the federal courts of

> power to issue divorce, alimony, and child custody decrees."' *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12–13 (2004) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)); *Fischer v. Clark*, No. 08-CV-3807, 2009 WL 3063313, at *2 (E.D.N.Y. Sept. 24, 2009).

*Id.* at 1. The Court further noted in that Order that "[a]lthough plaintiff cites to 42 U.S.C. § 1983, the sum and substance of his claims concern matters of state domestic relations law." *Id.* at *2. The Court held that plaintiff's "claims against [these defendants were] dismissed as they [were] barred by the domestic relations exception to the jurisdiction of the federal courts." *Id.*

In his second amended complaint, plaintiff makes substantially the same allegations as he made in his original complaint, and adds additional allegations of wrongdoing related to proceedings that occurred in 2013. Again, plaintiff takes issue with several actions taken by the state court judges during the child custody proceedings. However, once again, the sum and substance of his claims against these defendants concern matters of state domestic relations law. Thus, for the same reasons set forth in its December 26, 2012 Order, the Court again dismisses all of plaintiff's claims against New York Supreme Court, Hon. Alice Schlesinger; Kings County Family Court, Hon. Anthony Cannataro; and Berks County Family Court, Hon. Scott E. Lash pursuant to the domestic relations exception to federal jurisdiction.[8] *See Schottel v. Kutyba*, No.

---

[8] In addition, plaintiff's claims against these defendants are also barred for several other reasons. First, state agencies and state officials sued in their official capacities "are immunized from suit by private citizens under the Eleventh Amendment." *Sundwall v. Leuba*, 28 Fed. App'x 11, 12 (2d Cir. 2001) (applying Eleventh Amendment immunity to state court judges). Thus, plaintiff's claims against the state courts and the individual judges, to the extent that plaintiff is suing the judges in their official capacities, are barred under the Eleventh Amendment. *See McKnight v. Middleton*, 699 F. Supp. 2d 507, 521–23 (E.D.N.Y. 2010) (dismissing claims asserted against Kings County family court and family court judge in her official capacity on sovereign immunity grounds). Moreover, to the extent Plaintiff is suing these judges in their individual capacities, his claims are barred under the doctrine of judicial immunity. Judicial officers enjoy broad immunity from suit for monetary and injunctive relief for actions they take that are "judicial in nature." *See Huminski v. Corsones*, 396 F.3d 53, 74–75 (2d Cir. 2004). To determine whether actions taken by a judge are judicial in nature, courts ask whether those actions were "function[s] normally performed by a judge, and . . . whether [the parties] dealt with the judge in his judicial capacity." *Id.* Here, plaintiff does not allege that these defendants performed actions not typical of judges or that he dealt with them outside of their judicial capacity in court. Thus, to the extent that plaintiff is suing the judges in their individual capacities, his claims against them are also barred. *See McKnight*, 699 F. Supp. 2d at 523–25 (dismissing claims asserted against family court judge in her individual capacity on judicial immunity grounds). To the extent that plaintiff is seeking an injunction to vacate judgments that have already been entered before the state family courts (*see* Doc. No. 102),

06-CV-1577, 2009 WL 230106, at *1 (2d Cir. Feb. 2, 2009) (affirming dismissal under domestic relations exception where plaintiff's claims were "at heart, a dispute surrounding the custody of [plaintiff's] child" and therefore "begin and end in a domestic dispute.").

Plaintiff's claims against Gloria P. Margary, Rafael Margary, and Gloria A. Margary must be dismissed on the same basis. Plaintiff alleges that Gloria P. Margary, who appears to be the mother of his child, wrongfully removed their child from his residence with the intent to inflict emotional distress, and made fraudulent representations to the family courts. Plaintiff further alleges that Rafael Margary and Gloria A. Margary – whose relationship to Gloria P. Margary is never explained – aided and facilitated Gloria P. Margary's wrongful removal of the child from plaintiff's custody. Plaintiff claims that these defendants are "liable to plaintiff for damaging his relationship with his son and causing him pain and suffering, emotional distress, financial hardship, mental anguish and the loss of enjoyment of life." (2d Am. Compl. ¶ 66.) As relief, plaintiff requests, among other things, $17,000,000, "a Declaratory Decree Declaring Pennsylvania the Home State in [the] child custody case," "a Declaratory Decree vacating the judgment against plaintiff in [the] Family Offense case," and "a Declaratory Decree granting a trial against the defendant Gloria P. Margary for [the] Family Offenses committed." (2d Am. Compl. at 24.)

However, under the domestic relations exception, "[f]ederal courts have discretion to abstain from exercising jurisdiction over issues on the verge of being matrimonial in nature as long as full and fair adjudication is available in state courts." *Fischer v. Clark*, No. 08-CV-3807,

---

plaintiff's claims are barred by the *Rooker-Feldman* doctrine, which "provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." *Hachamovitch v. DeBuono,* 159 F.3d 687, 693 (2d Cir. 1998). Finally, to the extent that plaintiff is seeking to enjoin ongoing family court proceedings, his claims are barred by the *Younger* abstention doctrine, as those state proceedings appear to be ongoing, implicate the important interest the state has in child custody matters, and provide plaintiff with an adequate opportunity for judicial review of his claims. *See McKnight*, 699 F. Supp. at 520–21 (holding that pro se plaintiff's claims for injunctive relief related to child custody dispute were barred under the *Younger* abstention doctrine).

2009 WL 3063313, at *2 (E.D.N.Y. Sept. 24, 2009). Thus, courts "may be deprived of jurisdiction over claims that 'begin and end in a domestic dispute,' even if the plaintiff is seeking only monetary damages." *McKnight v. Middleton*, 699 F. Supp. 2d 507, 517 (E.D.N.Y. 2010) (quoting *Schottel*, 2009 WL 230106, at *1). At heart, plaintiff is complaining of conduct that is indistinct from the conduct at issue in the state family court proceedings. Whether plaintiff's son was wrongfully removed from his custody by Gloria P. Margary, whether plaintiff's son's home state is Pennsylvania or New York, and whether Gloria P. Margary's representations are indeed fraudulent are all questions that begin and end in the domestic dispute between these parties, and which should be adjudicated in the state family courts. *See McKnight*, 699 F. Supp. 2d at 520 ("This Court does not have superior competence to adjudicate these claims and, therefore, leaves them for the state courts to decide."). The relief that plaintiff seeks here against these defendants, if appropriate, can be obtained through the state courts. Accordingly, plaintiff's claims against Gloria P. Margary, Rafael Margary, and Gloria A. Margary are dismissed.[9] *See McKnight*, 699 F. Supp. 2d at 519–520 (dismissing under the domestic relations exception certain claims asserted against mother of plaintiff's child and her relatives since plaintiff "is complaining of the state court custody proceedings and thus his claims are indistinct from the domestic dispute."); *Fischer*, 2009 WL 3063313, at *3 (dismissing under the domestic relations exception certain claims asserted against mother of plaintiff's child because plaintiff "may raise

---

[9] Even if the domestic relations exception did not apply, claims against these defendants would have to be dismissed. Plaintiff brings suit against these defendants under Section 1983 and the Uniform Child Custody Enforcement Act. (*See* 2d Am. Compl. at 17.) However, as discussed in more detail below, to state a claim under Section 1983, a plaintiff must show that the defendants were acting under the color of state law. These defendants are private individuals, and the extent of plaintiff's allegations against them pertains to their alleged misrepresentations in the state court child custody proceedings and their related actions to obtain custody over plaintiff's son. Plaintiff fails to allege any facts that that show that these defendants were state actors or were willful participants, had an agreement, or conspired with state actors. Therefore, plaintiff fails to plausibly allege a Section 1983 claim against these defendants. *Cf. Humpherys v. Nager*, 962 F. Supp. 347, 353 (E.D.N.Y. 1997) (*sua sponte* dismissing for failure to state a claim § 1983 claim against private individuals who filed answer but not motions to dismiss). As all federal claims against these defendants would be dismissed, the Court would decline to exercise supplemental jurisdiction over plaintiff's state law claims. *See* 28 U.S.C. § 1367(c).

such arguments before the various state courts currently hearing the parties' custody dispute" and "[a] full and fair adjudication of [p]laintiff's claims . . . is available to [p]laintiff in state court.").

## C. Claims Against Remaining Defendants

Plaintiff asserts claims under Section 1983 against SUNY Downstate, Berks County Human Resources, the Queens County District Attorney, ADA Debra Pomodor, the Kings County District Attorney, and BCSSA. The claims against these defendants must be dismissed as well.

First, it appears that plaintiff has not properly served any of these defendants. In plaintiff's affidavit of service on SUNY Downstate, (Doc. No. 18 at 8), the affiant, Nicole Spansler, indicates that she "personally served the summons on the individual at [SUNY's address]," (*id.*) but the affidavit fails to indicate who the individual was, the relationship between that individual and the corporation, and whether that individual was authorized to accept service of process. As for the district attorneys, plaintiff insists that the personal service effectuated upon the New York Attorney General was sufficient service as to the New York district attorneys. However, under both federal and New York law, personal service upon the Attorney General is not sufficient for service upon a state official. *See* Fed. R. Civ. P. 4(j)(2); N.Y. C.P.L.R. § 307(2); *see also Berkowitz*, 921 F. Supp. at 968 ("[I]t is well established that service on the state attorney general does not constitute service on a state agency." (internal quotation marks omitted)). It appears that plaintiff mailed a copy of the summons and complaint to Pennsylvania's Attorney General. (*See* Doc. 18 at 4.) However, the Pennsylvania Attorney General is not authorized by law or appointment to accept process on behalf of a Pennsylvania county agency. *See* Pa. R. Civ. P. 422(b); *cf. White*, 2009 WL 320964, at *1 (discussing method of proper service on Pennsylvania county). Thus, it appears that plaintiff has not properly

served BCHR. Finally, "[t]o serve a United States agency or corporation . . . a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency . . . ." Fed. R. Civ. P. 4(i)(2); *see also id.* 4(i)(1) (setting forth method for serving the United States). Here, it appears that plaintiff has not served the United States nor mailed a copy of the summons and complaint to BCSSA.

Moreover, the state actors sued here are entitled to immunity under the Eleventh Amendment. *See McCullough v. Burroughs*, No. 04-CV-3216, 2005 WL 3164248, at *1 n.3 (E.D.N.Y. Nov. 29, 2005) (noting that a "Court may *sua sponte* dismiss a claim on the ground of Eleventh Amendment immunity because it affects subject matter jurisdiction." (quoting *Atlantic Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993)); *Benoit v. Conn. Dept. of Motor Vehicles*, 10-CV-1007, 2012 WL 32962, at *3 (D. Conn. Jan 6, 2012) (noting that "lower courts may raise the issue of Eleventh Amendment immunity *sua sponte*, [but] they are not required to do so." (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006)); *Elliot v. New York*, No. 09-CV-5019, 2009 WL 4039414, at *1–2 (E.D.N.Y. Nov. 20, 2009) (dismissing *sua sponte* claims asserted by *pro se* plaintiff who paid filing fee against state as barred under Eleventh Amendment).

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." This amendment "bars federal courts from entertaining suits brought by a private party against a state," *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993), unless the state waives its Eleventh Amendment immunity by express consent to suit or Congress abrogates the state's immunity by statute, *Gollomp v. Spitzer*, 568 F.3d 355, 366–67 (2d Cir. 2009). Neither

New York nor Pennsylvania has consented to Section 1983 suits in federal court. *See Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) ("It is well-established that New York has not consented to § 1983 suits in federal court and that § 1983 was not intended to override a state's sovereign immunity."); *Nails v. Pennsylvania Dept. of Transp.*, 414 F. App'x 452, 455 (3d Cir. 2011) ("Congress has not abrogated the States' immunity from section 1983 actions, and Pennsylvania has withheld its consent to suit in federal court." (citations omitted)) Similarly, it is well settled that Congress did not abrogate the states' sovereign immunity under Section 1983. *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990). The Eleventh Amendment extends immunity not only to a state but also to its agencies. *See Dube*, 900 F.2d at 594; *Mamot*, 367 F. App'x at 192–93; *Nails*, 414 F. App'x at 455. Thus, "in the absence of consent[, any claims against] the State or one of its agencies or departments . . . [are] proscribed by the Eleventh Amendment." *Dube*, 900 F.2d at 594 (quoting *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).

Plaintiff alleges that SUNY Downstate conspired with the New York Police Department [10] "to cause plaintiff bodily injury by giving him steroid [*sic*] and Motrin," deprive him of needed pain medication, and entrap him into purchasing illegal narcotics by "planting a confidential informant in the hospital." (Second Am. Compl. at 17.) Plaintiff claims that these actions violated his constitutional rights. (*See id.* at 15.) However, "[f]or Eleventh Amendment purposes, SUNY is an integral part of the government of the State [of New York] and when it is sued the State is the real party." *Dube*, 900 F.2d at 594. Thus, SUNY, and by extension SUNY Downstate, is entitled to Eleventh Amendment immunity. *See Mamot v. Bd. of Regents*, 367 Fed. App'x 191, 192 (2d Cir. 2010) (holding that SUNY is entitled to Eleventh Amendment

---

[10] It appears that plaintiff has dropped all claims against the New York Police Department and instead has substituted the City of New York in its place.

immunity); *Castells v. Fisher*, No. 05-CV-4866, 2007 WL 1100850, at *5 (E.D.N.Y. Mar. 24, 2007) (holding that SUNY Downstate is entitled to Eleventh Amendment immunity). As SUNY has not consented to suit under Section 1983 in federal court, "no relief, either legal or equitable, is available against" it. *Dube*, 900 F.2d at 594. Therefore, plaintiff's claims against SUNY Downstate are barred under the Eleventh Amendment and are dismissed. *See Garcia v. State Univ. of New York Health Sciences Center at Brooklyn*, No. 97-CV-4189, 200 WL 1469551, at *4 (E.D.N.Y. Aug. 21, 2000) *aff'd* 280 F.3d 98 (2d Cir. 2001) (dismissing Section 1983 claims asserted against SUNY Downstate as barred under Eleventh Amendment); *Acquaah v. State Univ. of New York Health Sciences Center at Brooklyn*, 199 F.3d 1321 (2d Cir. 1999) (affirming dismissal of Section 1983 claims asserted against SUNY Downstate on Eleventh Amendment immunity grounds).

Plaintiff's claims against BCHR must be dismissed on the same basis. Plaintiff alleges that he "was eligible for cash assistance thru the Tanf Federal funded program since he is disabled," but that in September 2012 BCHR denied "plaintiff cash assistance, conspiring with State Authorities so [that he] would not have funds to commute to New York for family court proceedings." (Second Am. Compl. at 13.) Plaintiff further claims that the "Public Welfare Hearing and Appeals office for Berks County" scheduled a hearing "knowing that it would conflict with a court date with the Family court in New York," but notwithstanding the fact that plaintiff gave notice of the conflict, "they dismissed the appeal for non appearance." (*Id.*) Finally, plaintiff alleges that he was directed to send BCHR some paperwork and did so, but that a "CAO Heidecker . . . maliciously canceled snap benefits." (*Id.*)

Although plaintiff names Berks County Human Resources as a defendant, based on these allegations, it appears that plaintiff is referring to Berks County Human Services, which

coordinates the delivery of various welfare programs for Berks County and shares the same address as the Human Resources department. *See* http://www.co.berks.pa.us/Dept/HumanServ/ Pages/default.aspx (last accessed March 1, 2014). But, the cash assistance programs that plaintiff alleges were wrongfully denied to him – TANF and SNAP – are administered by the Pennsylvania Department of Public Welfare. *See id.*; *see also* http://www.dpw.state.pa.us/ learnaboutdpw/index.htm (last accessed March 1, 2013).

Thus, it appears that plaintiff claims are directed against the Pennsylvania Department of Public Welfare. However, "Pennsylvania and federal law establish that the [Department of Public Welfare] is entitled to Eleventh Amendment immunity because it is an administrative agency without existence apart from the [Commonwealth of Pennsylvania]." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254–55 (3d Cir. 2010). Thus, plaintiff's Section 1983 claims related to the alleged wrongful denial of welfare benefits are dismissed. *See Bryant v. Allegheny County Domestic Relations Section*, No. 10-1272, 2011 WL 5326051, at *2 (W.D. Pa. Nov. 3, 2011) (dismissing *sua sponte* Section 1983 claims brought against the Pennsylvania Department of Public Welfare on Eleventh Amendment immunity grounds); *Dill v. Comm. of Pennsylvania*, 3 F. Supp. 2d 583, 587 (E.D. Pa. 1998) (holding that Section 1983 claim against Pennsylvania Department of Public Welfare was barred under the Eleventh Amendment).

Finally, the claims against BCSSA – a federal agency – also must be dismissed on sovereign immunity grounds. Plaintiff alleges that around November 2012 he "filed for disability thru the Berks County Social Security Administration," but BCSSA "conspiring with State authorities refused him benefits that he is eligible" to receive. (*See* Second Am. Compl. at 14.) Plaintiff alleges that in September 2012 he "applied for [t]he Social Security Administration to expedite the appeal due to hardship," but "their office stated it was denied by a judge, but

refused to give the judge['s] name or reason for the denial." (*Id*.) Although plaintiff brings suit against under Section 1983, the Court construes his claim as an action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (*Id*.) However, "[b]ecause an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). "It is well settled that the United States has not waived its sovereign immunity as to constitutional tort claims for money damages." *Spinale v. U.S. Dept. of Agriculture*, 621 F. Supp. 2d 112, 120 (S.D.N.Y. 2009). Therefore, plaintiff's claims against BCSSA must be dismissed on sovereign immunity grounds.[11] *See Robinson*, 21 F.3d at 510; *Spinale*, 621 F. Supp. 2d at 120; *Wooten v. U.S. Dept of Health and Human Servs.*, No. 10-CV-3728, 2011 WL 536448, at *6 (S.D.N.Y. Feb. 15, 2011).

### D. Failure to State a Claim Under 42 U.S.C. § 1983

Finally, plaintiff complaint fails to plausibly state § 1983 claims. A motion to dismiss for the failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure requires the Court to examine the legal, rather than factual, sufficiency of a complaint. A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[11] Furthermore, "a *Bivens* claim can only be brought against a federal employee in his individual capacity. It cannot be maintained against the United States, its agencies, or its employees in their official capacities." *McManamon v. Dept. of Veterans Affairs*, No. 11-CV-2820, 2011 WL 3423346, at *2 (citing *FDIC v. Meyer*, 510 U.S. 471, 484–86 (1994)). Thus, even if sovereign immunity did not apply, plaintiff's *Bivens* claim against the Social Security Administration would have to be dismissed for failure to state a claim upon which relief may be granted. *See id*.

A court considering a 12(b)(6) motion must "take[ ] factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). A complaint need not contain "detailed factual allegations," but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). The determination whether "a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–158 (2d Cir. 2007)).

In deciding a 12(b)(6) motion to dismiss, the Court must "construe a *pro se* complaint liberally." *Harris*, 572 F.3d at 72. In other words, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Since *pro se* litigants "are entitled to a liberal construction of their pleadings," the Court reads such pleadings "to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotations marks omitted). Furthermore, "[a] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir.

2013).  However, the Court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist."  *Molina v. New York*, 956 F. Supp. 257, 259 (E.D.N.Y. 1995).  A *pro se* plaintiff "must still comply with the relevant rules of procedural and substantive law . . . ."  *Ally v. Sukkar*, 128 Fed. App'x 194, 195 (2d Cir. 2005).  When a *pro se* plaintiff has altogether failed to satisfy a pleading requirement, the Court must dismiss the claim.  *See Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997).

Moreover, "[a] district court has the inherent authority to dismiss an action as frivolous, regardless of whether the plaintiff has been granted leave to proceed *in forma pauperis.*"  *Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (citing *Fitzgerald v. First E. Seventh St. Tenants Corp.,* 221 F.3d 362, 363–64 (2d Cir. 2000) (per curiam)).  "An action is frivolous where it lacks an arguable basis either in law or in fact."  *Id.* (internal quotation marks omitted); *see also* 28 U.S.C. § 1915(e)(2) ("Notwithstanding any filing fee . . . that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action  . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.");  *Kaiser v. Roberts*, No. 09-CV-1361, 2010 WL 326208, at *2 (D. Conn. Jan. 22, 2010) ("Although entitled 'Proceedings *in forma pauperis*,' section 1915(e)(2)(B) applies to parties who do not proceed *in forma pauperis* and who pay the relevant filing fees.").[12]

---

[12] Moreover, a district court may dismiss a complaint *sua sponte* for the failure to state a claim where a plaintiff was given notice of the grounds for dismissal and an opportunity to be heard.  *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991).  Here, the numerous motions to dismiss filed by other defendants provide sufficient notice, and plaintiff was afforded an opportunity to be heard when he replied to those motions with several opposition briefs.  *See Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (affirming *sua sponte* dismissal for failure to state claim as against a defendant who did not appear in the matter where other defendants filed a motion to dismiss and plaintiff responded thereto).  Moreover, plaintiff has already had two opportunities to amend his complaint.  Thus, although several defendants have not filed motions to dismiss, the Court has the authority to *sua sponte* dismiss plaintiff's claims for the failure to state a claim as against those defendants.  *See Wang v. Miller*, 356 F. App'x 516, 517 (2d Cir. 2009) (affirming *sua sponte* dismissal of § 1983 claim against private attorney for failure to state a claim).

### 1. Failure to Plausibly Allege State Action by Private Individuals

Several defendants argue that plaintiff's action must be dismissed because plaintiff fails to plausibly allege that they were state actors. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Therefore, private parties are not proper defendants in a Section 1983 action unless the private parties were acting under color of state law. *Jae Soog Lee v. Law Off. of Kim & Bae, PC*, 530 F. App'x 9, 9 (2d Cir. 2013) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)). "[A] private actor acts under color of state law when the private actor is a willful participant in joint activity with the State or its agents." *Id.* (internal quotation marks omitted). A "conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). Rather, to demonstrate a § 1983 conspiracy between a private party and a state authority sufficient to survive a motion to dismiss, plaintiff must show "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Id.* at 324–25. "[C]omplaints containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights will be dismissed." *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977). Moreover, "assertions [that] lack any factual foundation . . . are merely conclusory allegations 'masquerading as factual conclusions' [and] are insufficient to defeat a motion to dismiss." *Jackson v. Cnty of Rockland*, 450 Fed. App'x 15, 19 (2d Cir. 2011) (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006)).

In his second amended complaint, plaintiff asserts § 1983 claims against a number of private parties, but fails to plausibly allege that these private parties were acting under the color of state law.  Plaintiff alleges that Verizon NY and T-Mobile unlawfully wiretapped his home phone and internet services without a warrant "for the New York Police and District attorneys office."  (2d Am. Compl. at 19–20.)  Plaintiff 's alleges that Verizon NY began wiretapping him around 2010.  (*Id.* at 20.)  As for T-Mobile, plaintiff alleges that T-Mobile wiretapped his cellular phone from "about November 2009 until present" and conspired with authorities to withhold from state court the phone records of Gloria P. Margary that would have been helpful to plaintiff in resolving his state court child custody dispute.  (*Id.*)

However, although plaintiff argues that Verizon NY and T-Mobile acted under color of state law because they were involved in a conspiracy with state actors, (*see* Pl.'s Opp'n Br. (Doc. No. 149) at 3–6; Pl.'s Opp'n Br. (Doc. No. 159) at 2–4), and that they acted under the direction of defendant Pomodor, (*see* 2d Am. Compl. at 6), he wholly fails to allege specific facts that would plausibly show the existence of any agreement or concerted action between these defendants and any state actors.  Plaintiff fails to provide any allegations describing the purported agreement between these defendants or the alleged acts these defendants engaged in in furtherance of their purported agreement.  Indeed, plaintiff fails to provide the factual basis for his belief that his phone and internet services were tapped.  Plaintiff's bald assertions that there was a conspiracy between state actors and Verizon NY and T-Mobile to illegally wiretap him, without more, are insufficient to plausibly allege that these private defendants were acting under the color of state law.  *See Ciambriello*, 292 F.3d at 324–25; *see also Peacock v. De Simone*, No. 95-CV-3094, 1996 WL 1088917, at *12 (E.D.N.Y. July 1, 1996) (noting that to allege Section 1983 conspiracy, "plaintiff must demonstrate that the private party acted in a wilful

manner culminating in an agreement, understanding or "meeting of the minds" that violated the plaintiff's rights"). Thus, plaintiff's claims against Verizon NY and T-Mobile must be dismissed.

Plaintiff's claims against the lawyers involved in the child custody proceedings must be dismissed on the same basis. Plaintiff alleges that Mid-Penn conspired with the Berks and Kings County Family Courts to remove his son from his custody. Specifically, plaintiff alleges that the Berks County Family Court instructed Mid-Penn to "represent mother," but advised plaintiff "that there were no legal services available to him." (Second Am. Compl. at 7.) Plaintiff further alleges that Mid-Penn "deliberately gave Gloria Margary services knowing that she did not qualify for services since she was not a resident of the state and employed at the time." (*Id.*) Plaintiff also alleges that defendants Michael D. Carlin and Jessica A. Spector – two private attorneys – conspired with state court Judge Cannataro to deprive plaintiff of a fair trial during plaintiff's state child-custody proceeding. (*See* Second Am. Compl. at 20–22.) However, "[i]t is well established that private attorneys – even if appointed by the court – are not state actors for the purposes of § 1983 claims." *Licari v. Voog*, 374 Fed. App'x 230, 231 (2d Cir. 2010). Furthermore, "a legal aid society ordinarily is not a state actor amenable to suit under § 1983." *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000). Although he argues that these defendants conspired with the state court, plaintiff has failed to set forth any facts from which a conspiracy between these defendants and any state actor can be inferred. Plaintiff alleges that these defendants met in private with Judge Cannataro, but this sole, conclusory allegation "falls far short of pleading a 'close nexus' or 'joint engagement' to sustain a § 1983 claim." *See McKnight*, 699 F. Supp. 2d at 531. Furthermore, the fact that Mid-Penn was assigned by the Berks County Family court to represent the mother of plaintiff's child does not, by itself, supply

the requisite nexus to finding state action by conspiracy.  *See Ciambriello*, 292 F.3d at 324–25.

Quite simply, plaintiff's conclusory assertions that these defendants conspired with the state

court falls short of the specific factual pleadings required under *Twombly*.  *See McKnight*, 699 F.

Supp. 2d at 531; *Peacock*, 1996 WL 1088917, at *12; *see also Schnabel*, 232 F.3d at 87.

Accordingly, plaintiff's claims against Mid-Penn, Michael D. Carlin and Jessica A. Spector must

be dismissed.

### 2.  Failure to Plausibly Allege a Municipal Policy or Practice

Finally, plaintiff's claims against RPD[13] and the City of New York must be dismissed.

Plaintiff alleges that RPD violated his rights under § 1983 and the Fourth, Eighth, and Fourteenth

Amendments because the police unlawfully "concealed a Gps [*sic*] (FCC ID: Koblear1XR

No.15042969) and wire tap [*sic*] in [plaintiff's] car" and used the GPS to unlawfully track and

follow him; the police unlawfully "pulled [plaintiff] over for speeding when . . . doing 25 mph in

a 25 mph zone and issued him a citation;" and the police conspired to unlawfully enter plaintiff's

home.  (2d Am. Compl. at 6–7.)  For the reasons set forth below, the Court finds that plaintiff's

claims against the RPD are dismissed in their entirety.

As an initial matter, the Court notes that a municipal police department is not subject to

suit under Section 1983.  Section 1983 only applies to legal "person[s]."  42 U.S.C. § 1983.

Although a municipality is considered a "person" within the meaning of § 1983, *see Monell v.

N.Y.C. Dep't of Social Servs.,* 436 U.S. 658, 690 (1978), a police department, is a "sub-division"

---

[13] Plaintiff identifies the RPD in the complaint's caption but fails to mention the RPD anywhere in the body of the complaint, which only includes allegations against the Berks County Police Department – a nonexistent entity, apparently.  (*See* RPD's Br. (Doc. No. 123-3) at 8.)  The RPD, which filed a motion to dismiss, argues as a threshold matter that the complaint should be summarily dismissed against it because the RPD is not mentioned anywhere in the body of the complaint.  However, given plaintiff's *pro se* status and the fact that the RPD will not in any way be prejudiced the court considers plaintiff's references to the Berks County Police Department as referring to the RPD.  Moreover, this approach avoids the necessity of deciding plaintiff's argument that he can easily correct the "error of mislabeling" the RPD by amending the complaint.  (Pl.'s Opp'n Br. (Doc. No. 143) at 4.)

of the municipal government "through which the [municipality] fulfills its policing functions" and is not an independent legal entity subject to suit under § 1983. *See Martin v. Red Lion Police Dep't*, 146 Fed. App'x 558, 562 n.3 (3d Cir. 2005); *United States v. Kama*, 394 F.3d 1236, 1239 (9th Cir. 2005); *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992). Numerous courts addressing this issue have concluded that municipal police departments are not subject to suit under § 1983. *See, e.g.*, *Kiriakdis v. Borough of Vintondale Police Dep't*, No. 12-CV-188, 2013 WL 5414110, at *7 (W.D. Pa. Sept. 26, 2013); *La Grande v. Town of Bethlehem Police Dep't*, No. 08-CV-0738, 2009 WL 2868231, at *2 (N.D.N.Y. Sept. 1, 2009); *Walker v. U.S. Marshals*, No. 08-CV-959, 2009 WL 261527, at *2–3 (E.D.N.Y. Feb. 4, 2009); *Francis v. State's Attorney Off.*, No. 05-CV-64, 2006 WL 2349638, at *3 (D. Conn. July 27, 2006); *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 164 (D. Conn. 2005); *Peterson v. Easton Police Dep't Criminal Investigations Divs.,* No. 99-CV-4153, 1999 WL 718551, at *1 (E.D. Pa. Aug. 26, 1999). Thus, all of plaintiff's claims against the RPD could be dismissed on this ground alone.

In any event, even construing plaintiff's claims as properly directed at the correct municipal entity, his claims must nevertheless fail, as plaintiff fails to allege a § 1983 against a municipality. "To maintain a section 1983 claim against a municipality or its agents in their official capacities, a plaintiff must show that the municipality's agents engaged in unconstitutional actions . . . pursuant to an official policy or custom." *Katz v. Morgenthau*, 892 F.2d 20, 22 (2d Cir. 1989) (citing *Monell*, 436 U.S. at 690–95). To state a Section 1983 claim against a municipality, a plaintiff must plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth.*, 615 F.3d 129, 140 (2d Cir. 2010). A plaintiff "need not identify an express rule or regulation." *Patterson*

*v. County of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004). Rather, "[i]t is sufficient to show . . . that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law . . . ." *Id.* (internal quotations marks omitted). "Liability of a municipal defendant or an individual sued in his official capacity under . . . § 1983 cannot, however, be premised on a theory of *respondeat superior*." *Patterson*, 375 F.3d 206, 226. Instead, "there must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 444 (quoting *Abreu v. City of New York*, 657 F.Supp.2d 357, 360 (E.D.N.Y. 2009)).

Here, however, plaintiff fails completely to allege – let alone provide any facts in support of an allegation – that the RPD, or the City of Reading, maintained a custom, policy, or practice of unlawfully pulling over and citing drivers for speeding or for installing GPS tracking devices on automobiles. Plaintiff does not even name a single individual or allege that the officers of the RPD directed similar conduct toward anyone other than plaintiff. Moreover, in regard to the GPS device, plaintiff fails to allege any specific facts connecting the RPD to the installation of the GPS device. Instead, plaintiff vaguely asserts that "the NYC police and [the RPD]" concealed the GPS device and that the Pennsylvania police unlawfully followed him using the GPS device. (2d. Am. Compl. at 6.) Plaintiff fails to even identify whether it was the NYPD, the RPD, or some other Pennsylvania police department that "concealed" the device. These omissions highlight plaintiff's complete failure to meet *Twombly*'s plausibility threshold, and plaintiff's allegations fall far short of demonstrating a practice "so persistent or widespread as to constitute a custom or usage with the force of law." *Patterson,* 375 F.3d at 226 (internal quotation marks omitted). Thus, plaintiff's Section 1983 claim relating to these claims must fail. *See, e.g.*, *Palumbo v. Manhattan and Bronx Surface Transit Operating Auth.*, 346 F. Supp. 2d

493, 495 (S.D.N.Y. 2004) (dismissing § 1983 due process claim because plaintiff failed to allege "a policy or custom of violating employees' due process rights").[14]

As to plaintiff's claim that the RPD conspired to unlawfully enter his home, plaintiff similarly fails to allege that the RPD, or the City of Reading, maintained a custom, policy, or practice of such conduct.  Plaintiff broadly alleges that the RPD "conspired to enter his home by forcing him to register with the police departments [*sic*] False Alarm Reduction Program," and that "[t]he ordinance was changed by authorities to give themselves authority to enter the premises without a warrant."  (2d Am. Compl. at 7.)  Although plaintiff baldly alleges a conspiracy to change a city ordinance so that police could enter his home, his conspiracy allegation is devoid of a single fact demonstrating an agreement between the police and the Reading City Council to change the ordinance.  Plaintiff likewise fails to allege a single fact in support of his allegation that the RPD forced plaintiff to register with the alarm program or, indeed, that he actually suffered any harm as a result of this supposed registration.  As these assertions lack any factual foundation, they are merely conclusory allegations "masquerading as factual conclusions," *Jackson*, 450 F. App'x at 19, and fall far short of demonstrating a custom,

---

[14] Furthermore, plaintiff's claim that he was unlawfully pulled over and cited for speeding is not cognizable because plaintiff does not dispute that he subsequently pleaded guilty to speeding on January 10, 2012.  (*See* RPD's Br. Ex. A (Doc. No. 123-3) at 12–13 (ECF pagination).)  In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal . . . . A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id.* at 486–87; *see also Collins v. Greenberg*, 32 Fed. App'x 3, 4 (2d Cir. 2002) (§ 1983 claims involving false arrest and malicious prosecution "require a showing of a favorable disposition").  Thus, to the extent that that plaintiff claims a § 1983 violation in connection with being pulled over and cited for speeding, his claim is not cognizable under *Heck*.  *See Oliver v. Tepperman*, No. 08-CV-3685, 2010 WL 889276, at *3 (E.D.N.Y. Mar. 10, 2010) ("[I]t is well-established that a defendant who pleads guilty waives any challenge to the constitutionality of his arrest, interrogation, search and prosecution." (internal quotation marks omitted)); *Feurtado v. Gillespie*, No. 04-CV-3405, 2005 WL 3088327, at *6–7 (E.D.N.Y. Nov. 17, 2005) (dismissing, under *Heck*, § 1983 false arrest claim where plaintiff was convicted for underlying charge).

policy, or practice of unlawfully entering homes.  Thus, plaintiff's Section 1983 claim relating to the alleged conspiracy for RPD to unlawfully enter his home must fail.

Similarly, plaintiff's claims against the City of New York must be dismissed.  Plaintiff alleges that the NYPD, acting under the direction of ADA Pomodor, unlawfully commenced an investigation in 2009 in order to force him to testify for the state.  (*See* Second Am. Compl. at 5). Plaintiff claims that the NYPD "pursued [him] with illegal wire tapping and [subjected him] to at least three unlawful stop[s] and search[es]."  (*Id.*)  Finally, plaintiff alleges that the NYPD sent him threats through his internet browser to intimidate him.  (*Id.*)  However, plaintiff again completely fails to allege any facts that suggest that these actions were taken pursuant to a municipal policy or practice.  Plaintiff offers no facts that suggest that the alleged actions of the NYPD represented a practice so persistent or widespread as to constitute a custom or usage with the force of law.  Thus, plaintiff's conclusory allegations of wrongdoing simply do not plausibly allege a claim against the City of New York.  Accordingly, these claims are dismissed.

## III. Leave to Amend

When addressing  a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.  *Aquino v. Prudential Life & Cas. Ins. Co.*, 419 F. Supp. 2d 259, 278 (E.D.N.Y. 2005); *see also Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002) ("The liberal pleading standards applicable to pro se civil rights complaints in this circuit require that the district court give [plaintiff] an opportunity to flesh out his somewhat skeletal complaints before dismissing them").   A court should only deny a *pro se* plaintiff leave to amend when "it is 'beyond doubt that the plaintiff can provide no set of facts in support' of his amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999) (quoting *Ricciuti v. New York City*

*Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). Where a complaint has been dismissed for lack of subject matter jurisdiction, denial of leave to amend on the basis of futility may be appropriate. *Rahim v. Secretary, Establishment Div., Gov't of People's Republic of Bangl.*, 481 Fed. Appx. 18, 19 (2d Cir. 2012) (affirming district court's dismissal of *pro se* plaintiff's complaint without leave to amend where complaint was dismissed for lack of subject matter jurisdiction); *Gomes v. ANGOP*, No. 11 Civ. 0580, 2012 U.S. Dist. LEXIS 119049, at *55-56 (E.D.N.Y. Aug. 22, 2012) (dismissing pro se plaintiff's claim for lack of personal and subject matter jurisdiction, and declining to grant plaintiff leave to amend as amendment would be "futile").

There are many reasons here why leave to amend is denied. Primary among them is that this Court lacks subject matter jurisdiction over most of plaintiff's claims under the domestic relations exception, and jurisdiction over many of the defendants either because they are not amenable to suit in New York, or enjoy some type of immunity. He has also failed to properly serve those defendants over whom the Court may arguably exercise jurisdiction, obstinately relying on his prior efforts at service despite being told of service deficiencies as well as the proper service addresses to cure those defects. Finally, plaintiff has been unsuccessful in his attempt to raise many of the same claims in separate actions before this Court. (*See Martinez v. Cannataro et al.*, 13-CV-3392; *Martinez v. Cannataro et al.*, 14-CV-753.) [15] Moreover, plaintiff has already had two bites at the apple in this case, failing to plead anything but frivolous and factually unsupported claims in two complaints. He has also  properly serve several defendants despite being given proper addre.  Moreover, It appears from his various pleadings that plaintiff

---

[15] By separate Memorandum and Order issued today, the later-filed action has been dismissed.

has not and cannot provide a set of facts that will give rise to a plausible claim in this Court. As such, leave to amend would be futile.

## CONCLUSION

For the reasons set forth above, plaintiff's second amended complaint is dismissed in its entirety. The Clerk of the Court is directed to enter judgment accordingly and to close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to mail a copy of this Memorandum and Order and the accompanying Judgment to petitioner *pro se* via U.S. Mail, and close this case.

SO ORDERED.

Dated: Brooklyn, New York
     March 17, 2014

*Roslynn R. Mauskopf*
_____